IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BARRY DOUGHERTY,**<br>Plaintiff, | **CIVIL ACTION** |
| v. | |
| **ESSENTIA INSURANCE COMPANY and HAGERTY INSURANCE AGENCY, LLC,**<br>Defendants. | **NO. 24-2483** |

**MEMORANDUM**

**HODGE, J.**                                                                                       **September 17, 2025**

Plaintiff Barry Dougherty ("Dougherty") brought this present action against Defendants Essentia Insurance Company ("Essentia") and Hagerty Insurance Agency, LLC ("Hagerty") (collectively "Defendants") for breach of contract, violation of the Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371, and violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1 *et seq*. Presently before the Court is Defendants' Partial Motion to Dismiss Counts I and II as to Hagerty, and Count III as to both Defendants (ECF No. 11). For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

**I.      BACKGROUND**

    **A.      Factual Background**[1]

Taking the allegations in the First Amended Complaint as true, the relevant facts are as follows. Dougherty, a Pennsylvania resident, is the owner of a 1956 Mercedes Benz 300 SC 2DR Cabriolet—an extremely rare car, of which only forty-nine were ever built. (ECF No. 9, ¶¶ 11–12.) Each 1956 Mercedes Benz 300 SC 2DR Cabriolet was hand-crafted, and each piece of chrome

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

trim was shaped and precisely matched to the individual car. (*Id.* ¶ 13.) Dougherty also owned ten other rare, antique, and collectible automobiles. (*Id.* ¶ 14.) In or around August 2021, Dougherty re-evaluated his insurance needs for his collection of rare automobiles. (*Id.* ¶ 15.)

Essentia is an insurance provider. (*Id.* ¶ 3.) Hagerty is Essentia's "Managing General Agent in performing all tasks of the every day operations of the insurance company." (*Id.* ¶ 5.) Hagerty advertised itself as a specialist in insurance for classic and antique cars. (*Id.* ¶ 16.) Specifically, Hagerty advertised "(1) having specific expertise in classic, collector, and antique automobile insurance; (2) specific expertise in the claims process, particularly with classic, collector, and antique vehicles and auto parts; and (3) issuing 'Guaranteed Value Coverage' whereby, in the event of a covered total loss, the insured would receive 'every cent of [their] car's insured value.'" (*Id.* ¶ 17.) In reliance on these representations, Dougherty contacted Hagerty for an evaluation of his current insurance coverage. (*Id.* ¶ 21.) Hagerty provided Dougherty with an insurance quote on September 2, 2021. (*Id.* ¶ 24.) Dougherty provided Hagerty with "items necessary to bind coverage," and Hagerty sent the effective policy to Dougherty on September 13, 2021. (*Id.* ¶¶ 26–27.)

The policy coverage included the 1956 Mercedes Benz 300 SC 2DR Cabriolet. (*Id.* ¶ 35.) The insurance policy ("Essentia Policy," as defined in the First Amended Complaint) provides: "The words, 'we', 'us' and 'our' refer to the company shown in the Declarations which is providing this insurance." (*Id.* ¶ 31.) The Declarations Pages list both Hagerty and Essentia. (*Id.* ¶ 32.) The Declarations Pages identify that the policy is underwritten by Essentia. (ECF No. 9-1 at 14, 39.)[2] The Essentia Policy's Guaranteed Value of the 1956 Mercedes Benz 300 SC 2DR Cabriolet was

---

[2] While Dougherty asserts that Hagerty performed the underwriting on the Essentia Policy, Exhibit F attached to the First Amended Complaint clearly states that the Essentia Policy was underwritten by Essentia. (ECF No. 9-1 at 14, 39.)

$1,000,000.00, which the Loss Conditions provision provided would be the agreed-upon value in the case of total loss or "constructive total loss." (ECF No. 9, ¶¶ 36, 38.) Total loss is not defined by the Essentia Policy. (*Id.* ¶ 39.) "Constructive total loss" is defined in the Essentia Policy as "a loss where the cost to repair damage to 'your covered auto' will exceed the 'guaranteed value' of the vehicle when fully repaired." (*Id.* ¶ 40.)

On December 20, 2022, the 1956 Mercedes Benz 300 SC 2DR Cabriolet sustained damages in a collision. (*Id.* ¶ 41.) Despite Hagerty's representations of its "expert claims handling" and "in-house claims team" which "specializes only in classic and collector cars," (*id.* ¶ 64), Hagerty and Essentia sent a third-party appraiser on January 3, 2023, who estimated repairs could be completed for $11,119.49. (*Id.* ¶¶ 65–68.) During the inspection, the appraiser stated he had very little experience with rare, classic, or antique vehicles, and that he normally inspected modern vehicles such as Toyota Corollas. (*Id.* ¶ 67.) On January 18, 2023, a Private Client Adjuster of Hagerty and Essentia called Dougherty to advise that the estimate from the third-party appraiser would be disregarded. (*Id.* ¶ 72.) Defendants engaged another third-party inspector, who inspected the vehicle on June 14, 2023, and estimated the damages. (*Id.* ¶¶ 98–102.) This inspector commented that he had no knowledge, understanding, or experience with restoring or repairing that type of rare and antique automobile. (*Id.* ¶ 103.) The Private Client Adjuster issued "the initial estimate amount plus a supplement amount" to Dougherty of $41,956.38. (*Id.* ¶¶ 106, 108.) Counsel for Dougherty responded in a letter to the Private Client Adjuster, asserting that "[i]n fact, the vehicle is a total loss. Claim is made for the Guaranteed Value of the Policy, namely $1,000,000.00 plus applicable coverage increases." (*Id.* ¶ 110.)

On April 25, 2024, a claims adjuster wrote to counsel for Dougherty that Hagerty located vehicles available for purchase to source parts for the 1956 Mercedes Benz at a purchase price of

"$488,427, which is reduced to $244,213.50 taking into account a 50% salvage value of the unused parts of the donor vehicle which [Dougherty] would retain." (*Id.* ¶ 147.) Hagerty sought to send a supplemental payment of $275,011.57 to Dougherty so that he could purchase the donor vehicle. (*Id.*) Dougherty did not agree that this was an adequate handling of the claim under the contract. (*Id.* ¶ 152.) "The only issue in the present case is whether the 1956 Mercedes Benz 300 SC 2DR Cabriolet was a total loss or a constructive loss." (*Id.* ¶¶ 44, 154.)

### B.  Procedural History

Dougherty commenced a civil action in the Court of Common Pleas of Philadelphia County, Pennsylvania, on December 12, 2023. (ECF 9-2 at 40.) His complaint was filed in that court on May 8, 2024. (ECF No. 1-4.) Defendants removed the case to this Court on June 7, 2024, on diversity grounds.[3] (ECF No. 1.) On July 1, 2024, Defendants filed a partial motion to dismiss the complaint. (ECF No. 8.) Plaintiff filed the First Amended Complaint on July 11, 2024 (ECF No. 9), which resulted in Defendants' original motion to dismiss being denied as moot. (ECF No. 15.) Defendants filed the instant Motion on July 25, 2024. (ECF No. 11.)

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits, but simply accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6)

---

[3] Essentia is a citizen of Missouri and Virginia, and Hagerty is a citizen of Delaware, Michigan, and Virginia. (ECF No. 4.) Dougherty is a citizen of Pennsylvania. (ECF No. 9, ¶ 1.) The amount in controversy is over $75,000.

4

motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "conclusory or 'bare-bones' allegations will [not] survive a motion to dismiss." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Id*.

## III.   DISCUSSION

### A.   Breach of Contract (Count I)

Defendants argue that Plaintiff's breach of contract claim must be dismissed as to Hagerty because Hagerty is not in privity of contract with Dougherty and therefore cannot be liable under the contract. Defendants do not challenge Plaintiff's breach of contract claim as to Essentia at this stage. In response, Dougherty contends that Hagerty was involved in "all aspects of the issuance" of the policy. (ECF No. 12-2 at 17.)

To state a claim for breach of contract under Pennsylvania law,[4] a party must allege: (1) the existence of a contract; (2) breach of the contract; and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Because Defendants argue Hagerty is not in privity of contract, the question raised is whether a contract exists between Hagerty and Dougherty.

---

[4] Both parties apply Pennsylvania law. While the Essentia Policy contains several mentions of Pennsylvania law, it does not contain a clear choice of law provision. Because this is a diversity case, this Court applies the forum state's choice of law rules. *Zanitech v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 140 (3d Cir. 2024). Pennsylvania courts apply a flexible "interest/contacts" methodology to contract choice of law questions. *Hammersmith v. TIG Ins. Co.*, 480 F.2d 220, 226–27 (3d Cir. 2007). Under this approach, the law of the forum with the "most interest in the problem" applies. *Id.* at 227–28. Pennsylvania law properly applies because Dougherty is domiciled in Pennsylvania, the policy was delivered to Pennsylvania, the 1956 Mercedes Benz 300SC 2DR Cabriolet was registered in Pennsylvania (ECF No. 9-1 at 72). *See Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa. Super. Ct. 2002).

Dougherty alleges that Hagerty is an agent of Essentia. (ECF No. 9, ¶ 5) ("Hagerty was acting on behalf of Essentia, serving as its Managing General Agent in performing all tasks of the every day operations of the insurance company, Essentia.").[5] The insurance policy is underwritten by Essentia, and Hagerty provides claims services. (ECF No. 9-1 at 14; *see also, e.g.*, *id.* at 102 ("Insurance services provided by Hagerty Insurance Agency, LLC[.] Policies underwritten by Essentia Insurance Company.")).

It is well-settled law that an agent is not liable on a contract between the principal and third party when there is a disclosed principal, unless the agent voluntarily agrees with the third party to be liable. *See Revere Press, Inc. v. Blumberg*, 246 A.2d 407, 409 (Pa. 1968); *Burton v. Boland*, 489 A.2d 243, 245 (Pa. Super. Ct. 1985); *Apogee Wausau Grp., Inc. v. PMC Prop. Grp., Inc.*, No. CV 22-3690, 2024 WL 2057359, at *6 (E.D. Pa. May 8, 2024); *State St. Rest. Grp., Inc. v. Cincinnati Cas. Co.*, 2021 WL 7967598, at *4 (M.D. Pa. July 19, 2021). In order for Hagerty to be liable under the contract to Dougherty, Hagerty must have voluntarily agreed to be liable to Dougherty or failed to disclose that Essentia was the principal.

The First Amended Complaint contains no allegations to support that Hagerty voluntarily agreed to be liable to Dougherty. Dougherty has only alleged the Essentia Policy as the relevant contract with Hagerty; therefore, the Court looks to that contract to determine if Hagerty is a party to it. While Hagerty's name appears in the contract, the contract is clear that Essentia is the underwriter. (ECF No. 9-1 at 14, 39.) Only Essentia signed the contract. (ECF No. 11-5 at 7, 69.)[6]

---

[5] Dougherty alleges that Hagerty acted as the operational arm of Essentia; that the two acted as one entity for purposes of insuring the risks, issuing policies and adjusting claims; and that they were one and the same for purposes of all dealings with Dougherty. (ECF No. 9 at ¶¶ 5–8.) These bare allegations lack facial plausibility because there is no factual content pled to explain these assertions. Moreover, these are contradicted by the allegations that Hagerty is the agent of Essentia.
[6] Defendants dispute that the Essentia Policy attached to the First Amended Complaint is authentic. Defendants attached a certified version of the Policy to their Motion to Dismiss as Exhibit A.

6

The auto insurance card issued to Dougherty lists only Essentia as the insurance company. (*Id.* at 106.) While Hagerty's name appears on the Declarations pages, Essentia is identified on those pages as the underwriter, and Hagerty is not given any specific identifier. (ECF No. 9-1 at 14, 39.) Merely using a company's letterhead does not make that company a party to the contract. *See Lockhart v. Fed. Ins. Co.*, No. 96-cv-5330, 1998 WL 151019, at *3 (E.D. Pa. Mar. 30, 1998).

Dougherty does not allege that Hagerty failed to disclose Essentia as the principal. While there is a possibility of confusion on this when the Private Claims Adjuster asserted that "Hagerty has issued a payment . . . for the repair cost to [Dougherty's] 1956 Mercedes-Benz 300SC," (ECF No. 9-1 at 111), Dougherty and his counsel understood that the claim was paid by Essentia, not Hagerty. *See id.* at 121 ("Kindly note that the acceptance of these monies from the Essentia Insurance Company is not intended, in any manner, to be considered a release of any claims against the Essentia Insurance Company and/or agreement as to the cost of the repair."). Moreover, Dougherty named Essentia as a defendant in this case. *See, e.g.*, *Casey v. GAF Corp.*, 828 A.2d 362, 369 (Pa. Super. Ct. 2003) (finding there to be "no question" that a principal was disclosed where plaintiffs named the principal as a defendant). Because Essentia was disclosed as the principal, and Hagerty did not voluntarily assume liability under the contract with Dougherty, Hagerty cannot be liable to Dougherty as the agent of Essentia for breach of contract. The Court therefore dismisses Count I as to Hagerty.

---

Dougherty has not disputed the authenticity of Defendants' Exhibit A. A court may consider an undisputed authentic document that a defendant attaches as an exhibit to a 12(b)(6) motion to dismiss if plaintiff's claims are based on the document. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279–80 (3d Cir. 2018).

B.     **Statutory Bad Faith (Count II)**

Defendants similarly argue that Hagerty cannot be liable under 42 Pa. C.S.A. § 8371 because Hagerty is not an insurance company, and thus cannot be an "insurer" within the meaning of the statute. *See Brown v. Everett Cash Mut. Ins. Co.*, 157 A.3d 958, 968 (Pa. Super. Ct. 2017) ("[A] statutory action for bad faith can only be brought against an insurer."). Plaintiff responds that Hagerty qualifies as an "insurer" because it performed all functions of an insurer on behalf of Essentia.

The Pennsylvania Bad Faith statute provides a cause of action "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. C.S.A. § 8371. A defendant cannot be liable under section 8371 if they are not an insurer. *See Delaware Valley Home Evaluations, Inc. v. Housemaster of Am., Inc.*, 559 F. Supp. 2d 591, 599 (E.D. Pa. 2008) ("Plaintiff cannot succeed on a claim against Defendant for bad faith unless Defendant is an insurance company that issued an insurance policy to Plaintiff."). Courts applying Pennsylvania law interpret "insurer" to mean an entity that "issues policies, collects premiums, and in exchange assumes certain risks and contractual obligations." *T & N PLC v. Pa. Ins. Guar. Ass'n*, 800 F. Supp. 1259, 1262 (E.D. Pa. 1992); *see also Delaware Valley Home Evaluations*, 559 F. Supp. 2d at 592 (defining insurer as the "underwriter or insurance company with whom a contract of insurance is made"); *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 498 (Pa. Super. Ct. 2004) (noting that "insurer" is defined under the Insurance Department Act of 1921, 40 Pa. Stat. § 221.3, as "any person who is doing, has done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization or conservation by an insurance commissioner").

An entity that sells an insurance policy is a broker, not an "insurer" for purposes of section 8371. *Kofsky v. Unum Life Ins. Co.*, No. CV 13-5647, 2014 WL 4375725, at *3 (E.D. Pa. Sept. 2,

2014). Nor is an insurance agent or claims administrator an "insurer" for purposes of this statute. *See Marston v. Mid-Century Ins. Co.*, No. CV 17-5471, 2018 WL 10810961, at *1 n.1 (E.D. Pa. May 1, 2018); *McLaren v. AIG Domestic Claims, Inc.*, 853 F. Supp. 2d 499, 510 (E.D. Pa. 2012).[7] Dougherty alleges that Hagerty is the agent of Essentia. There are no allegations that Hagerty is doing, purports to do, or is licensed to do an insurance business.[8] Dougherty has not alleged that Hagerty was the decisionmaker with respect to approval or denial of the insurance claim, but only that Hagerty is the agent of Essentia. Thus, Hagerty cannot be deemed an "insurer."

Moreover, a defendant cannot be liable under an insurance policy to which they are not a party. *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991). Several courts have held that defendants who are not parties to an insurance contract cannot be liable under section 8371. *See, e.g.*, *Corley v. Nat'l Indem. Co. & Sterling Claim Servs., Inc.*, No. CV 2:16-CV-00584, 2016 WL 1578775, at *4 (E.D. Pa. Apr. 18, 2016); *Reto v. Liberty Mut. Ins.*, No. CV 18-2483, 2018 WL 3752988, at *2 (E.D. Pa. 2018); *Lockhart v. Fed. Ins. Co.*, No. CIV. A. 96-5330, 1998 WL 151019, at *3 (E.D. Pa. Mar. 30, 1998). Because Hagerty is not a party to the Essentia Policy, it cannot be liable under section 8371.

---

[7] Dougherty cites to *Chu v. Disability Reinsurance Mgmt. Servs.*, Case No. 06-91E, 2006 U.S. Dist. LEXIS 61244 (W.D. Pa. Aug. 29, 2006) to support that a claims administrator can be an insurer under section 8371. However, in *Chu*, the insured alleged that the claims administrator made the decision to deny benefits under the insurance policy, which has not been alleged here. Moreover, *Chu* has not been subsequently relied on for the proposition that a claims administrator constitutes an insurer under section 8371. *See McLaren*, 853 F. Supp. 2d at 510.

[8] Dougherty also argues that Hagerty is an "insurer" for purposes of section 8371 under the *Brown* two-factor analysis. *See* 860 A.2d at 498–99. However, before the *Brown* court reached that analysis, it already determined that it was undisputed that the two defendants were insurers. As only Essentia qualifies as an insurer, this Court does not reach the question of which among multiple insurers is the insurer for purposes of section 8371.

### C. Unfair Trade Practices and Consumer Protection Law (Count III)

The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Stat. Ann. § 201-3; *see also Barrie v. Progressive Specialty Ins. Co.*, No. CV 17-30, 2017 WL 1150631, at *8–9 (E.D. Pa. Mar. 28, 2017). The statute enumerates specific categories of unfair methods of competition and unfair or deceptive acts in section 201-2, including a catch-all provision for "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi). Additionally, the UTPCPL provides a private right of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of" the defendant's "use or employment . . . of a method, act or practice declared unlawful by section 3 of this act . . . ." 73 Pa. Stat. Ann. § 201-9.2. The UTPCPL should be "liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Barrie*, 2017 WL 1150631, at *9 (quoting *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007)).

To state a claim under the UTPCPL, a plaintiff must allege (1) conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance on defendant's misrepresentation of deceptive conduct; and (3) that this justifiable reliance caused ascertainable loss. *See Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510–11 (E.D. Pa. 2010). In interpreting "deceptive conduct," the Third Circuit noted that "deceptive conduct does not require proof of the elements of common law fraud, but [] knowledge of the falsity of one's statements or the misleading quality of one's conduct is still required." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013).

Defendants argue that Dougherty's UTPCPL claim should be dismissed as to both Hagerty and Essentia because (a) failure to perform contractual obligations constitutes nonfeasance and thus does not rise to the level of malfeasance required under UTPCPL; (b) insurance handling and payment of a claim are not actionable under UTPCPL; and (c) Dougherty has not alleged ascertainable loss.

There is no right to recover under the UTPCPL for failure to perform a contractual duty, which is nonfeasance. *Leach v. Northwestern Mut. Ins. Co.*, 262 F. App'x 455, 459 (3d Cir. 2008). But here, at least as to Hagerty, Dougherty has alleged more than "an insurer's mere refusal to pay a claim." *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995). Dougherty alleges that Hagerty, in contrast to its representations about knowledge of classic cars, failed to have a qualified inspector assess the damage to his vehicle. Dougherty's First Amended Complaint does not allege merely that the "Guaranteed Value Coverage" was not paid out. Rather, he alleges that Hagerty failed to investigate and evaluate the claim as it should have were it to have the expertise it claimed—which constitutes "improper performance of a contractual obligation." *Id.*

On Defendants' second argument, the Pennsylvania Superior Court held that UTPCPL applies to the sale of an insurance policy, but not to the handling of insurance claims.[9] *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020); *see also Moravia Motorcycle, Inc. v. Allstate Ins. Co.*, No. CV 21-1274, 2022 WL 623374, at *4 (W.D. Pa. Mar. 3, 2022) ("[T]he UTPCPL 'applies to conduct surrounding the insurer's pre-formation conduct,'

---

[9] In the fraudulent joinder context, which applies a less stringent standard than 12(b)(6), many courts, including this Court, have found that UTPCPL claims against insurance adjusters for improper handling of an insurance claim are colorable under Pennsylvania law. *See Winner v. Progressive Adv. Ins. Co.*, No. CV 23-1273, 2023 WL 8283176, at *3 (E.D. Pa. Nov. 30, 2023). Because the Court finds that Dougherty has alleged deceptive trade practices by Hagerty beyond the handling of an insurance claim, this Court need not decide whether a claim against an insurance adjuster for improper handling of an insurance claim can meet the 12(b)(6) standard.

11

while the bad-faith statute applies to 'post-contract formation conduct.'") (quoting *Dunleavy v. Mid-Century Ins. Co.*, 460 F. Supp. 3d 602, 612 (W.D. Pa. 2020)). Dougherty's reliance on cases predating *Wenk* by decades, where the question of whether such a claim is viable is not directly addressed, are not persuasive.[10] The only allegations attributable to Essentia involve post-contract formation conduct,[11] and thus, the UTPCPL claim must be dismissed as to Essentia.

However, Dougherty's First Amended Complaint also alleges deceptive trade practices in the sale of the insurance policy, including allegations of Hagerty's advertisement of its expertise in classic cars, which was not borne out in Dougherty's experience with the claims process. Specifically, Dougherty alleges that Hagerty "held itself out as: (1) having specific expertise in classic, collector, and antique automobile insurance;" and "(2) specific expertise in the claims process, particularly with classic, collector, and antique vehicles and auto parts." (ECF No. 9, ¶ 17.) Dougherty alleges that he sought insurance sold by Hagerty in reliance upon its representations and advertisements, (*id.* ¶ 244), and that these representations were unfounded, misleading and/or false. (*Id.* ¶ 245.) Dougherty's allegations of Hagerty's representations thus extend beyond the mere handling of an insurance claim.

Defendants argue that these alleged misrepresentations are non-actionable puffery, and that Dougherty's claim must fail because the terms of the policy he was sold are not different than the terms initially represented to him. In support, Defendants cite to *Nelson v. State Farm Fire & Cas.*

---

[10] For instance, *Ash v. Continental Ins. Co.*, 932 A.2d 877 (Pa. 2007) construes section 8371 *in pari materia* with the UTPCPL to determine the statute of limitations for an action brought under section 8371. 932 A.2d at 881. The *Ash* Court does not hold, or even address, whether there is a viable claim under the UTPCPL based solely on the handling of an insurance claim.

[11] The allegations focus on Hagerty as the entity involved in advertising and soliciting the sale of the insurance to Dougherty. There are conclusory allegations that Hagerty and Essentia "acted as one entity for purposes of insuring risks, issuing policies and adjusting claims," (ECF No. 9, ¶ 6); however, there are no allegations that Essentia made false representations to Dougherty.

*Co.*, 665 F. Supp. 3d 708 (W.D. Pa. 2023), *aff'd sub nom. Nelson v. State Farm Fire & Cas. Co*, 2024 WL 1132765 (3d Cir. Mar. 15, 2024). The court in that case, which was at the summary judgment stage, found claims including that the insurer "would take great care of her" and "like a good neighbor, State Farm is there," to be unactionable puffery. In this case, the First Amended Complaint cites to Hagerty's website, which includes statements such as "We know collectible and vintage cars, so you deal with real people who understand your car and your needs." (ECF No. 9, ¶ 18.) An email from Hagerty to Dougherty advertised its "In-House Claims Team- *Our Claims team specializes only in Classic and Collector Cars.*" (*Id.* ¶ 24.) These statements induced Dougherty to purchase the Essentia Policy for his classic cars, and it was justifiable that Dougherty relied on them. Dougherty has alleged that Hagerty did not understand the unique nature of his vehicle, and that the claims team did not have the specialized knowledge to handle such a claim. These assertions are distinct from a statement such as that the insurance agent would "take great care of her," which is too general and vague. *See Nelson*, 665 F. Supp. 3d at 724. Hagerty's representations to Dougherty, as alleged in the First Amended Complaint, go beyond mere puffery.

If "the crux of the UTPCPL claim" is the handling of the insurance claim rather than misrepresentations in the context of the sale, the UTPCPL claim cannot proceed. *See Holovich v. Progressive Specialty Ins. Co.*, 600 F. Supp. 3d 572, 585 (E.D. Pa. 2022). Dougherty alleges multiple times that "[t]he only issue in the present case is whether the 1956 Mercedes Benz 300 SC 2DR Cabriolet was a total loss or a constructive total loss." (ECF No. 9, ¶¶ 44, 154.) If this question were the only issue in the case, the crux of the UTPCPL claim would be the handling of the insurance claim, which is nonfeasance. However, at this stage, Dougherty has sufficiently alleged a UTPCPL claim against Hagerty based on alleged fraudulent or deceptive conduct in the sale of the Essentia Policy, on which Dougherty justifiably relied. *E.g.*, ECF No. 9, ¶ 252(b)–(n).

Lastly, Defendants argue that Dougherty has failed to allege ascertainable loss. *See, e.g.*, *Prest v. Nat'l Gen. Ins. Co.*, 2:19cv1109, 2020 WL 13866716, at *4 (W.D. Pa. Mar. 25, 2020) (finding no ascertainable loss where "[a]ny loss is directly related to [defendant's] handling of the [insurance] claim"). The UTPCPL provides a cause of action where a person "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" under the UTPCPL. 72 Pa. Stat. Ann. § 201-9.2(a). Dougherty has alleged that Hagerty's representations of its expertise with classic cars induced him to purchase the policy, but it failed to investigate and otherwise handle the claim as it would have if the representations were accurate. The allegations go beyond a mere disagreement in the appraisal of damage to the 1956 Mercedes Benz because Dougherty alleges repeated lack of knowledge in classic cars by Hagerty despite its claimed expertise in the area, which led to Dougherty's detriment. Dougherty therefore has alleged an ascertainable loss as a result of Hagerty's claimed misrepresentations.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Count I and II as to Hagerty is granted, Defendants' Motion to Dismiss Count III as to Essentia is granted, and Defendants' Motion to Dismiss Count III as to Hagerty is denied. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**